David W. Knotts, ISB No. 3627
Carsten A. Peterson, ISB No. 6373
CAREY PERKINS LLP
Capitol Park Plaza
300 North 6th Street, Suite 200
P. O. Box 519
Boise, Idaho  83701
Telephone:  (208) 345-8600
Facsimile:  (208) 345-8660

Gary L. Cooper, ISB No. 1814
Cooper & Larsen, Chartered
151 North Third Avenue, Second Floor
P.O. Box 4229
Pocatello, Idaho 83205-4229
Telephone: (208) 235-1145
Facsimile: (208) 235-1182

Attorneys  for  Electrical  Wholesale
     Supply Co., Inc.

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSEPH H. DAVIS,<br><br>       Plaintiff,<br><br>vs.<br><br>ELECTRICAL WHOLESALE SUPPLY CO., INC.,<br><br>       Defendant. | Case No. 4:14-CV-80-BLW<br><br>MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

## I.
## INTRODUCTION

This matter is before the Court on Defendant Electrical Wholesale Supply Co.,

Inc.'s ("EWS") Motion for Summary Judgment.  The Plaintiff has alleged claims of

harassment and discrimination based on conversations that he had with his father, Kreg Davis, who is President and CEO of EWS.  The Plaintiff cannot satisfy the necessary elements of the causes of action alleged in his Complaint. Thus, summary judgment in favor of Defendant is appropriate in this matter.

## II.
## FACTUAL AND PROCEDURAL HISTORY

The Defendant's District of Idaho Local Rule 7.1(b)(1) Statement of Undisputed Material Facts, filed concurrently herewith, is incorporated herein by reference as if set forth in full.

## III.
## SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. Rule 56(c), summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The moving party meets its initial burden on the motion by either: "(1) pointing out that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial or (2) producing affirmative evidence demonstrating that the nonmoving party will be unable to prove its claim or defense." *Beach v. JD Lumber, Inc.*, 2010 U.S. Dist. LEXIS 16265, *8–11 (D. Idaho, Jan. 6, 2010)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 3323 (1986) at 325). "When the non-moving party has the burden of proof at trial, summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case or claim." *Id.* at *8–11.

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

## IV.
## ARGUMENT

**A.     The Plaintiff cannot establish a prima facie case of disparate treatment because there is no evidence of discrimination or similarly situated EWS employees that received more favorable treatment.**

In analyzing disparate treatment claims based on religion, courts apply the burden shifting framework set forth by the United States Supreme Court in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973).  The Plaintiff has the burden of establishing a prima facie case by showing:

> (1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.

*Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004) (citations omitted); *see also Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir. 2007) (recognizing that the prima facie elements may be tailored according to the particular circumstances of each case).

The undisputed facts of this case show the Plaintiff cannot prove that "similarly situated" EWS employees were treated more favorably than himself, or that other circumstances surrounding his termination were otherwise discriminatory. Though "similarly situated" employees need not have identical roles, they must be similar "'in all material respects.'" *Hawn v. Exec. Jet Mgmt.*, 615 F.3d 1151, 1157 (9th Cir. 2010)(quoting *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006)). The materiality element depends on the context and particular facts of the case. *Hawn*, 615 F.3d at 1157; *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). Consideration must be given to "differentiating or mitigating circumstances" that would distinguish the Plaintiff's conduct "or the employer's

treatment of them for it." *Economos v. Scotts Co., No. 05-271*, 2006 U.S. Dist. LEXIS 84646, at *15-16 (E.D. Pa. Nov. 20, 2006) (citations, quotations, and alterations omitted).

The Plaintiff's Complaint is based on allegations that he was singled out and confronted by his father, Kreg Davis, when he left The Church of Jesus Christ of Latter-Day Saints ("LDS Church") in June 2013. However, the entire premise of the Plaintiff's Complaint fails because he did not inform Kreg Davis that he had "left the Church" until September 2013. K. Davis Aff. ¶ 30. The first time Kreg Davis learned that the Plaintiff had "resigned" from the LDS Church was in October 2013, after the Plaintiff's termination. *Id.* In his deposition, the Plaintiff admitted that he wanted to keep his decision to leave the LDS Church a secret from Kreg Davis. J. Davis Depo., p. 111. He also admitted he did not make his decision official until an email to the LDS Church. *Id.* at pp. 99, 105. Since Kreg Davis did not know the Plaintiff had left the LDS Church, the Plaintiff's claim for disparate treatment fails because Kreg Davis was unaware of the Plaintiff's alleged membership in a "protected class" prior to his termination.

Further, EWS does not track applicants' or employees' religious affiliation or give preference to members of the LDS Church. K. Davis Aff. ¶ 26. The Plaintiff must show that an EWS employee who was a member of the LDS Church, and who was similarly situated in all material respects, was treated more favorably based on similar conduct or that other circumstances indicate that discrimination occurred. Here, the materiality requirement requires consideration of the father/son relationship between the Plaintiff and Kreg Davis, which constitutes "differentiating or mitigating circumstances" that distinguish Joseph Davis from other EWS employees. Their relationship provides necessary context for the allegations set forth in the Plaintiff's Complaint.

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

The first conversation that forms the basis of the Plaintiff's Complaint occurred in an airplane hangar leased by EWS at the Idaho Falls airport, where Kreg Davis has an office.  *Id.* at ¶ 12. This is not the corporate office for EWS, as the Plaintiff implies. The distinction is significant in that the hangar was used, not just for business, but also for various family functions that the Plaintiff attended.  *Id.*  Previously, Kreg Davis and the Plaintiff had non-work related discussions during business hours as father and son.  *Id.* at ¶ 9. Therefore, one day, after a meeting at the hangar in June 2013, Kreg Davis initiated a discussion with the Plaintiff, as his father. *Id.* at ¶ 13.

At that time, Kreg Davis believed that the Plaintiff and his wife were having a "crisis of faith." *Id.* at ¶ 11.  Kreg Davis told the Plaintiff that he was speaking to him as a father, and merely asked what was going on in his life. *Id.* at ¶ 13. The Plaintiff did not express any confusion or hesitation in having the discussion. *Id.* The Plaintiff admitted in his deposition that Kreg Davis informed him that he wanted to have a discussion with him as a father. J. Davis Depo., p. 117.

In response to his open-ended question, Kreg Davis was verbally attacked by the Plaintiff on a variety of topics, including religion. K. Davis Aff. ¶ 14. Given the information shared by the Plaintiff, Kreg Davis believed that his son might have a sexual addiction. *Id.* As a result, he asked the Plaintiff, <u>one time</u>, if he viewed pornography and masturbated. *Id.* The question was asked as a concerned father, and not to harass or discriminate against the Plaintiff.

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

Thereafter, in approximately July 2013, Kreg Davis and the Plaintiff had another discussion regarding the EWS policy, as contained in the Employee Handbook.[1] *Id.* at ¶ 15. The conversation took place at Kreg Davis' cabin, in the evening, while the Plaintiff was laying on a couch.  *Id.*  EWS had an official internet policy prohibiting access to pornography at work, which the Plaintiff agreed to when he began working for EWS in December 2012.  K. Davis Aff., Ex. A. Given the Plaintiff's open stance on pornography, Kreg Davis was concerned as to whether the Plaintiff could abide by the internet policy. K. Davis Aff. ¶ 15. Moreover, as EWS' IT Manager, it was the Plaintiff's job to block and monitor pornography that may be viewed by EWS employees.  *Id.*  After some discussion, the two agreed to work toward an amended internet-use policy. *Id.* at ¶ 16. Kreg Davis did not ask if the Plaintiff looked at pornography, or forbid him from viewing pornography on his personal computer or cell phone. *Id.* Kreg Davis did not ask the Plaintiff about masturbation during this conversation.  J. Davis Depo., p. 143.  Based on their agreement, Kreg Davis believed the issue regarding pornography was resolved.  *Id.*

From the date of the conversation at Kreg Davis' cabin until September 24, 2013, there are no allegations of any additional discussions regarding pornography, masturbation, or religion.  It is undisputed that the Plaintiff did not complain about the prior conversations with Kreg Davis to anyone at EWS.

The final discussion alleged by the Plaintiff relates to Facebook posts that he made, during work hours on an EWS computer, that were highly critical of the LDS Church and its leaders. K. Davis Aff. at ¶¶ 18–22. The inflammatory posts were not an expression

---

[1]The Plaintiff has alleged a conversation between himself and Kreg Davis occurred before this time at Kreg Davis' home, which Kreg Davis does not recall. Pl's Compl., ¶ 25. Regardless, there is no allegation in the Plaintiff's EEOC Complaint or in the instant matter that pornography was ever discussed.

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

of the Plaintiff's own religious beliefs, but rather, intentionally disparaged doctrine and beliefs held by LDS Church members. The Plaintiff identified himself as an EWS employee on the public portion of his Facebook profile and included a picture of LDS leader Joseph Smith with the heading: "At 14 is visited by Satan and two beings of light."" K. Davis Aff., Ex. B.

After seeing the posts, Kreg Davis became concerned that such posts could offend EWS' customers who would then not want to do business with EWS. *Id.* at ¶ 19. Kreg Davis invited the Plaintiff to his home on September 24, 2013 to discuss the issue. *Id.* at ¶ 21. Unbeknownst to Kreg Davis, the Plaintiff recorded this conversation.  Although Kreg Davis confined his concerns to the Facebook posts, the Plaintiff brought up pornography and masturbation.  *Id.* at ¶ 21; Ex. B, p. 15.

Although the Plaintiff's Complaint alleges he was discharged because of his religious beliefs, the Plaintiff has not specified any particular religious beliefs for which he was discharged. Pl's Compl., at ¶36.  The explanation given in his deposition was that he was discharged for his belief "[t]hat the character and nature of Joseph Smith is – should or could be scrutinized." J. Davis Depo., p. 70.  He also testified regarding his belief that "other Mormon leaders could be scrutinized."  *Id.* at p. 71.

The Plaintiff's claim, therefore, is difficult to categorize. The instant matter is not a "typical" reverse religious discrimination claim where an innocent, non-believing plaintiff was "picked on" by co-workers or supervisors for failure to adhere to a particular set of religious beliefs. *cf. Noyes v. Kelly Servs.*, 488 F.3d 1163, 1167 (9th Cir. 2007). It is not an infringement on the Plaintiff's religious rights to be prohibited from disparaging the religion of others. No court has ever so held. *But see Chalmers v. Tulon Co.*, 101 F.3d

1012, 1021 (4th Cir. 1996)(holding that employers cannot be forced to accommodate an employee who sends letters to co-workers criticizing their religious choices under the guise of religious rights because it subjects the employer to possible suits from other employees based religious harassment). Asking an employee to be conscientious of the religious beliefs of customers is not religious harassment or discrimination.  It is an acceptable practice, embodied in the anti-discrimination and equal opportunity policies enforced by most employers.

For example, in *Peterson v. Hewlett-Packard*, the plaintiff was a devout Christian who believed that Hewlett-Packard's anti-harassment policy, which included "sexual orientation" as a protected class, was offensive to his Christian values. 358 F.3d 599, 602 (9th Cir. 2004). After he was asked to remove posters containing scriptural references to homosexuality, he maintained that he had a right to post the messages.  The plaintiff was ultimately terminated for his refusal to remove the scriptural passages and he filed an employment discrimination claim with the EEOC.  *Id.*

In *Peterson*, the Ninth Circuit held that the plaintiff could not satisfy a prima facie case of discrimination. *Id.* at 605. The court disagreed with the plaintiff's argument that being asked to remove the posters constituted harassment by his supervisors regarding his religious beliefs. *Id.* at 604. The court noted that unlike Hewlett-Packard's diversity campaign, the plaintiff's posters were not merely an expression of the plaintiff's religion, but were an attack on other employees on account of their beliefs.  *Id.* at 604–605. The court concluded he was not discharged because of his religious beliefs, but because of the hostility shown towards the beliefs of other employees. *Id.*

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

Therefore, to satisfy the prima facie case for disparate treatment, the Plaintiff must show that LDS employees, with similar jobs and similar familial relationships with Kreg Davis or other supervisors, who made similar inflammatory remarks about the religious beliefs of others from an EWS computer, or took similar positions about pornography, received more favorable treatment than himself. Although the Plaintiff would have the Court ignore the significance of the relationship between himself and Kreg Davis, their relationship is material to the Plaintiff's claims in this case and gives context to their conversations.

Here, what began as a personal conversation between a father and his son, later morphed into the Plaintiff's intentional disparagement of the LDS Church on Facebook, using an EWS computer during business hours. Their subsequent conversation about these posts was not discriminatory—it was motivated by legitimate business-related concerns. During that conversation, the Plaintiff revived the pornography and masturbation issues.  The transcript from their September 24 conversation shows the Plaintiff was trying to "bait" his father into terminating his employment because of the Facebook posts, which Kreg Davis did not do.  Thus, based on the relevant facts and circumstances preceding and surrounding the Plaintiff's termination, he cannot show that he experienced discrimination or was treated less favorably than similarly-situated EWS employees.

> **B.**   **The Plaintiff cannot establish his prima facie case of retaliation because he did not engage in a "protected activity."**

The Plaintiff also alleges that he was discharged from his employment with EWS in retaliation for making a complaint against his father, Kreg Davis, for religious discrimination and harassment. To succeed on a retaliatory discharge claim, the Plaintiff

must "first establish a prima facie case of retaliation by showing that []he engaged in a protected activity [under Title VII], that []he was thereafter subjected by [his] employer to adverse employment action, and that a causal link exists between the two." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982); *Jurado v. Eleven-Fifty Corp.*, 813 F.2d 1406, 1411 (9th Cir. 1987).

A "protected activity" under Title VII includes "the filing of a charge or a complaint, or providing testimony regarding an employer's alleged unlawful practices, as well as engaging in other activity intended to "oppose[]" an employer's discriminatory practices." *Raad v. Fairbanks N. Star Borough*, 323 F.3d 1185, 1197 (9th Cir. 2003). However, an activity is only deemed "protected" when the charge, complaint, or opposition is based on a "'**reasonable belief**' that the employer has engaged in an unlawful employment practice." *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994)(citations omitted)(emphasis added).  The reasonable belief must be made in good faith.  *Id.*  It is "not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable." *Patterson v. State Dep't of Health & Welfare*, 151 Idaho 310, 320, 256 P.3d 718, 728 (2011).

Though the Plaintiff may be given "due allowance" for his limited knowledge of the intricacies of Title VII, the conduct at issue must "fairly fall within the protection of Title VII to sustain a claim of unlawful retaliation." *Reece v. Pocatello/Chubbuck Sch. Dist. No. 25*, 713 F. Supp. 2d 1222, 1233 (D. Idaho 2010)(citation omitted). A complaint regarding "an isolated incident" cannot constitute protected activity unless "a reasonable

person" would believe that the isolated incident violated Title VII. *See Miller v. WinCo Holdings, Inc.*, 2006 U.S. Dist. LEXIS 37145, at *24-25 (D. Idaho May 22, 2006); *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 963 (9th Cir. 2009); *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001)(holding employee could not have reasonably believed that the comment "I hear making love to you is like making love to the Grand Canyon" amounted to actionable sexual harassment). This "reasonable person" determination requires examination of all of the relevant circumstances, including the frequency and severity of the involved conduct. *Go Daddy*, 581 F.3d at 963. A complaint that is unreasonable, meritless, or motivated by bad faith is not protected by Title VII. *Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 892 (7th Cir. 2004).

In this case, the Plaintiff could not have reasonably believed in good faith that his conversations with Kreg Davis were violations of Title VII. As discussed above, the Plaintiff's allegations completely fail to put in context and accurately set forth the discussions with Kreg Davis.  In support of his claim for sexual harassment, the Plaintiff told Dale Baldwin that Kreg Davis had asked him if he viewed pornography or masturbated on three different occasions, which the Plaintiff knew was not true.  Baldwin Decl., Ex. A at EWS0040.

The undisputed facts in this case show that Kreg Davis asked about pornography and masturbation during one conversation and in his role as a father. The Plaintiff admitted during his deposition that Kreg Davis prefaced the conversation in the hangar as being in his role as father. Further, with respect to the first conversation, Plaintiff admitted in his conversation with Kreg Davis on September 24, 2013 that he had let the

question about pornography and masturbation "slide."  Aff. of Counsel, Ex. C, pp. 16-17.

That is, he was not offended by the question and could not reasonably believe that he had

been harassed.  Only after he was questioned about his Facebook postings did he choose

to revive the issue and claim he had previously been offended.

When Kreg Davis initiated a conversation about pornography at his cabin, it

was in the context of the EWS internet-use policy. Kreg Davis believed the issue to be

resolved when they agreed to work toward amended policy language.  Kreg Davis claims

that he did not ask the Plaintiff if he viewed pornography.  K. Davis Aff. ¶ 16. Although the

Plaintiff claimed in his deposition that Kreg Davis did ask him if he viewed pornography, he

admitted that he was not asked if he masturbated.  J. Davis Depo., p. 143.  Thereafter, the

Plaintiff himself raised the issues of pornography and masturbation during their

conversation on September 24, 2013.

The fact that there is disagreement as to whether there was a conversation

between the conversations at the hangar and at Kreg Davis' cabin is insignificant. There

is no allegation in the EEOC Complaint or the Complaint in this matter that Kreg Davis

asked about pornography or masturbation during that alleged conversation. In his

deposition, seemingly trying to improve his position, the Plaintiff stated that although Kreg

Davis did not directly ask him about pornography or masturbation, it was somehow implied.

J. Davis Depo., pp. 204–206.

Despite the Plaintiff's knowledge of Title VII, his report of sexual harassment

to Dale Baldwin was not a protected activity. The Plaintiff fully understood the context of

the conversations he had with his father, but ignored and misrepresented the facts in order

to make a claim for sexual harassment. The Plaintiff had no reasonable, good faith basis to claim that he had been asked about pornography and masturbation on three different occasions by Kreg Davis in his role as CEO of EWS, as he reported to Mr. Baldwin. Rather, the Plaintiff misrepresented the content and context of the complained-of discussions with his father when making the claim. At most, there were only two conversations initiated by Kreg Davis regarding the topic of pornography, one of which concerned the EWS internet-use policy, and only one discussion when the Plaintiff was asked about masturbation. The Plaintiff's testimony that Kreg Davis asked him whether he viewed pornography during the discussion at Kreg Davis' cabin does not create an issue of fact. The facts do not support the Plaintiff's claim that Kreg Davis initiated a conversation about pornography or masturbation on three different occasions as CEO of EWS.[2]

At most, the undisputed facts show there was one conversation where Kreg Davis asked about pornography and masturbation. Even if the Plaintiff failed to understand that Kreg Davis was speaking as his father, that conversation, months before his termination, is an isolated incident, which does not constitute "protected activity" under Title VII. *Go Daddy*, 581 F.3d at 963. Thus, the Plaintiff cannot satisfy a prima facie case of retaliation.

### C.     The Plaintiff's false report of sexual harassment was a legitimate, non-discriminatory reason to terminate his employment.

Even if the Plaintiff could satisfy a prima facia case of disparate treatment or retaliation, his discharge was for a legitimate and non-discriminatory reason, which is

---

[2] Or on four different occasions, as the Plaintiff claimed for the first time during his deposition.

protected is protected under Title VII. *Beck v. UFCW*, Local 99, 506 F.3d 874, 883 (9th Cir. 2007).

The first time the Plaintiff raised any type of complaint for harassment and discrimination was to Kreg Davis on September 24, 2013. K. Davis Aff. ¶ 21. The Plaintiff made a claim for sexual harassment to Dale Baldwin on September 26, 2013. Baldwin Decl. ¶ 4. As part of his investigation, Dale Baldwin interviewed Kreg Davis, Bart Davis, and the Plaintiff individually and asked each of them to provide their version of the facts. Baldwin Decl. ¶ 7. Kreg Davis told Dale Baldwin that on one occasion, and in his capacity as the Plaintiff's father, he had asked the Plaintiff if he viewed pornography and masturbated. *Id.* at ¶ 8. The Plaintiff told Mr. Baldwin that Kreg Davis had asked him these questions on <u>three different occasions</u> and in his role as President and CEO of EWS. *Id.* at ¶ 10. As discussed above, the undisputed facts show the Plaintiff's allegations were not true. Mr. Baldwin considered the Plaintiff's report and concluded he was not telling the truth. Mr. Baldwin correctly recognized Joseph's report for what it was—false.

Employers are not prohibited from disciplining an employee who has filed a frivolous claim of harassment or discrimination. *Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 890-91 (7th Cir. 2004). An internal complaint filed maliciously and in bad faith can justify termination of employment. *Id.* at 891. Here, the Plaintiff was not fired for making a complaint to Dale Baldwin. Rather, the Plaintiff was terminated <u>for making a false complaint</u>, which is not entitled to protection under Title VII. Thus, Mr. Baldwin's correct conclusion that the Plaintiff's report of harassment was false constituted a legitimate and non-discriminatory reason to terminate the Plaintiff's employment.

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

D.    **The Plaintiff cannot show that the conversations with his father constituted conduct that was sufficiently severe or pervasive to constitute a hostile work environment.**

A claim of hostile work environment based on "religious harassment" requires the Plaintiff to prove:

(1) that he was subjected to verbal or physical conduct of a...[religious] nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment."

*Mendez v. St. Alphonsus Reg'l Med. Ctr., Inc.*, 2014 U.S. Dist. LEXIS 161659, at *37 (D. Idaho Sept. 12, 2014)(citing *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003).

To show that a work environment was "sufficiently severe or pervasive," the Plaintiff must show "the occurrence of numerous improper acts which establish a pattern of conduct sufficiently severe or pervasive to alter the conditions of employment." *Strongman v. Idaho Potato Comm'n*, 129 Idaho 766, 770, 932 P.2d 889, 893 (1997); *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000). It is the "creation of the overall hostile work environment [that] is the prohibited act, not the individual incidents which comprise the hostile work environment cause of action."  *Frazier v. J.R. Simplot Co.*, 136 Idaho 100, 105, 29 P.3d 936, 941 (2001)(internal citation omitted).

To sustain a claim for hostile work environment, the Plaintiff must show that his working environment was "both subjectively and objectively...perceived as abusive." *Harris v. Forklift Sys., Inc.*, 114 S. Ct. 367, 370 (1993). Whether the workplace is objectively hostile is based on the totality of the circumstances and must be determined from the perspective of a reasonable person, which incorporates considerations "peculiar to the

individual and their circumstances." *Fowler v. Kootenai Cnty.*, 128 Idaho 740, 744, 918 P.2d 1185, 1189 (1996); *Jeremiah v. Yanke Mach. Shop*, 131 Idaho 242, 248, 953 P.2d 992, 998 (1998).

### i.    Subjectively Hostile Environment

First, if the Plaintiff did not subjectively perceive the alleged conduct to be abusive, "the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." *Nichols v. Azteca Rest. Enters.*, 256 F.3d 864, 873 (9th Cir. 2001)(citing *Harris*, 510 U.S. at 21-22).

The evidence shows the Plaintiff did not  perceive his workplace was hostile. The Plaintiff never told Kreg Davis that he was upset or offended by the content of their conversations. J. Davis Depo., p. 146. The Plaintiff did not make any claim of harassment or discrimination until September 24, 2013, when he injected pornography and masturbation into the discussion of his Facebook postings.

### ii.    Objectively Hostile Environment

The Plaintiff must establish that "a reasonable person in the [Plaintiff's] circumstances would have found the environment hostile and abusive." *Fowler v. Kootenai County*, 128 Idaho 740, 744, 918 P.2d 1185, 1189 (1996); *United States EEOC v. GNLV Corp.*, 2014 U.S. Dist. LEXIS 177439, at *34-35 (D. Nev. Dec. 18, 2014). This inquiry requires "careful consideration of the social context in which particular behavior occurs and is experienced by its target." *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998). The "real social impact of workplace behavior often depends on a constellation of

surrounding circumstances, expectations and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Id.* at 82.

In making this determination, the Court may consider the frequency and severity of the discriminatory conduct, "whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Strongman v. Idaho Potato Comm'n*, 129 Idaho 766, 770, 932 P.2d 889, 893 (1997)(citing *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67 (1986)). "Simple teasing, offhand comments, and isolated incidents" do not amount to a hostile work environment. *Id.* "Even patently offensive comments that are sporadic and reveal no religious animus towards a plaintiff are insufficient to support a claim of hostile work environment." *Carmody v. Bed Bath & Beyond*, 2006 U.S. Dist. LEXIS 28008, at *16-17 (D. Idaho Apr. 24, 2006)(citing *Shabat v. Blue Cross Blue Shield,* 925 F. Supp. 977 (W.D.N.Y. 1996)).

In this case, the Plaintiff has not shown that the conversations he had with Kreg Davis created an objectively hostile or abusive work environment. As discussed above, it is impossible to analyze the objective component without considering the father-son relationship between the Plaintiff and Kreg Davis, which is "the social context in which particular behavior occurs and is experienced by its target." *Oncale,* 523 U.S. at 81 (1998).

As discussed above, the undisputed evidence shows that Kreg Davis only asked the Plaintiff on one occasion if he viewed pornography or masturbated, which Kreg Davis said he asking as a father. Thereafter, the conversation between the two about

pornography at Kreg Davis' cabin in July 2013 was not related to religion. Rather, the conversation related to EWS' policy on pornography in the workplace.  K. Davis Aff. ¶ 15.

Comparing this case to other cases from the Ninth Circuit where an actionable hostile work environment was found, it is clear that the Plaintiff's allegations, even if true, do not rise to the level of an objectively hostile work environment.  *See, e.g., EEOC v. National Educ. Ass'n, Alaska*, 422 F.3d 840, 843 (9th Cir. 2005) (finding triable issue whether work environment was sufficiently severe where male supervisor shouted profanities at female employees and touched them in a physically threatening manner); *Nichols v. Azteca Rest. Enters., Inc.* 256 F.3d 864 (9th Cir. 2001)(finding hostile work environment where employee was relentlessly called vulgar names by co-workers); *EEOC v. Hacienda Hotel*, 881 F.2d 1504 (9th Cir. 1989) (finding a hostile work environment where hotel employee repeatedly subjected hotel maids to vulgarities, sexual remarks, and requests for sexual favors); *but c.f. Sanchez v. City of Santa Ana*, 936 F.2d 1027 (9th Cir. 1990)(no hostile work environment found despite allegations that employer posted a racially offensive cartoon, made racially offensive slurs, targeted Latinos when enforcing rules, and kept illegal personnel files on plaintiffs because they were Latino).

At most, the conversations in this case were akin to offhand comments or isolated incidents, if anything, and certainly contained no religious animus toward the Plaintiff. *Carmody*, 2006 U.S. Dist. LEXIS 28008, at *16-17.  Therefore, the Plaintiff's claim for hostile work environment should be dismissed.

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18

###### D.    Unlawful Hiring and Employment Practices

Plaintiff also alleges EWS engages in discriminatory hiring practices, choosing to hire only persons who are members of the LDS Church as part of EWS' "corporate team." Pl's Compl. at ¶¶ 47–49. He also alleges that EWS' employee handbook has a "chilling effect" that he believes will discourage employees from filing harassment claims in the future. Pl's Compl. at ¶¶ 50–53.

First, the Plaintiff has produced no evidence that EWS gives any preference in hiring or advancement to members of the LDS Church. Aff. K. Davis, at ¶ 26.  There is no corporate office religion and EWS does not track the religious affiliation of its employees. *Id.*   In fact, one of the Plaintiff's brothers, Jacob Davis, who holds himself out as an atheist, is an assistant manager in EWS' Idaho Falls branch and is a member of the EWS Board. K. Davis Aff. ¶ 27.  EWS also searches for employees in a variety of ways, none of which target LDS candidates exclusively.  *Id.* at ¶ 26.

Furthermore, the Plaintiff does not have standing to seek injunctive relief under § 2000e-5(g)(1). The Plaintiff is no longer employed by EWS, does not seek reinstatement, and has not filed this suit as a class action.  This case "does not provide an appropriate occasion for inquiry in [EWS'] present [employment] practices." *Reese v. Batesville Casket Co.*, 1981 U.S. Dist. LEXIS 9626, at *22 (D.D.C. May 13, 1981). Without evidence that the Plaintiff faces an imminent threat of future injury, there can be no justification for any form of injunctive relief.  *See Compston v. Borden*, Inc., 424 F. Supp. 157, 162 (S.D. Ohio 1976)(citing *O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S. Ct. 669, 676 (1974): "Past exposure to illegal conduct does not in itself show a present case or

controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.").

Here, the Plaintiff cannot show that he personally faces an imminent threat of future injury by repetition or reoccurrence of the alleged violations in the future. See *Wilkins v. United States*, 2005 U.S. Dist. LEXIS 41268, at *47-48 (S.D. Cal. June 29, 2005); *Drum v. Clarke*, 2007 U.S. Dist. LEXIS 101651, at *7-8 (W.D. Wash. Apr. 2, 2007). Thus, the Plaintiff's claims regarding EWS' alleged employment practices should be dismissed for lack of standing.

**V.**
**CONCLUSION**

Based on the foregoing, the Plaintiff cannot sustain a cognizable claim under Title VII or the Idaho Human Rights Act. Defendant EWS respectfully requests that its Motion for Summary Judgment be granted and all claims against it be dismissed with prejudice.

DATED this 3rd day of April, 2015.

CAREY PERKINS LLP


By /s/ Carsten A. Peterson
      Carsten A. Peterson, Of the Firm
      Attorneys for Electrical Wholesale
      Supply Co., Inc.

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 20

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 3rd day of April, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECM system which sent a Notice of Electronic Filing to the following CM/ECF Registered Participants:

Gary Lee Cooper                             <u>Gary@cooper-larson.com</u>

James D. Holman                           <u>holman@thwlaw.com</u>


                                                     /s/ Carsten A. Peterson
                                                     Carsten A. Peterson

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 21