David W. Knotts, ISB No. 3627
Carsten A. Peterson, ISB No. 3239
CAREY PERKINS LLP
Capitol Park Plaza
300 North 6th Street, Suite 200
P. O. Box 519
Boise, Idaho  83701
Telephone:  (208) 345-8600
Facsimile:  (208) 345-8660

Gary L. Cooper, ISB No. 1814
Cooper & Larsen, Chartered
151 North Third Avenue, Second Floor
P.O. Box 4229
Pocatello, Idaho 83205-4229
Telephone: (208) 235-1145
Facsimile: (208) 235-1182

Attorneys   for   Electrical   Wholesale
    Supply Co., Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSEPH H. DAVIS,<br><br>          Plaintiff,<br><br>vs.<br><br>ELECTRICAL WHOLESALE SUPPLY<br>CO., INC.,<br><br>          Defendant. | Case No. 4:14-cv-2014-80-BLW<br><br>DEFENDANT'S MEMORANDUM IN<br>OPPOSITION TO PLAINTIFF'S<br>MOTION FOR PARTIAL SUMMARY<br>JUDGMENT |

Defendant Electrical Wholesale Supply Co., Inc. ("EWS"), by and through its

attorneys of record, Carey Perkins LLP, hereby submits the following Memorandum in

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT - 1

Opposition to Plaintiff's Motion for Partial Summary Judgment.

## I.
## INTRODUCTION

In his Motion for Partial Summary Judgment, the Plaintiff attempts to obscure the relevant context and circumstances surrounding the Plaintiff's discharge by using conclusory statements that he has met the prima facie elements for his claims of retaliation and disparate treatment.  Without citing any case authority, he concludes that the basis for his discharge was not legitimate and non-discriminatory. Moreover, the Plaintiff has incorrectly assumed that Title VII or Idaho law gives him the unfettered right to lodge a false complaint of harassment and/or discrimination.  As discussed below, the Plaintiff cannot meet his burden of showing a prima facie case on his retaliation and disparate treatment claims. Further, the Plaintiff has not made any showing to meet his burden of establishing pretext.  Therefore, not only should the Plaintiff's Motion for Partial Summary Judgment be denied, but the evidence shows that EWS is entitled to summary judgment on its motion. EWS incorporates by reference its arguments set forth in its Motion for Summary Judgment, and other filings in support of its Motion.

## II.
## FACTUAL AND PROCEDURAL HISTORY

EWS hereby incorporates by reference, as if fully set forth herein, Defendant's Statement of Undisputed Facts in Support of its own Motion for Summary Judgment (Doc. 25), and Defendant's Statement of Disputed Facts filed concurrently herewith.

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 2

**III.**
**STANDARD OF REVIEW**

Summary judgment is proper where "no genuine and disputed issues of material fact remain, and when, viewing the evidence in a light most favorable to the non-moving party, the movant is clearly entitled to prevail as a matter of law." *Cady v. Hartford Life & Accidental Ins. Co.*, 930 F. Supp. 2d 1216, 1223 (D. Idaho 2013)(citing Fed. R. Civ. P. 56). Where both parties move for summary judgment, the applicable standard is unchanged and "the court must evaluate each party's motion on the merits." *Id.*

On issues where the moving party bears the burden of proof at trial, the moving party must show "that no genuine issue of material fact remains" by presenting evidence, which if uncontroverted at trial, "would entitle it to prevail on that issue." *Harn v. Scottsdale Ins. Co.*, 2014 U.S. Dist. LEXIS 132954, at *11 (D. Idaho Sept. 22, 2014). "Once it has done so, the non-moving party must set forth specific facts controverting the moving party's prima facie case." *Cady*, 930 F.Supp.2d at 1223.

On issues where the moving party will not bear the burden of proof at trial, "the moving party may discharge its burden of showing there is no genuine issue of material fact by demonstrating an absence of evidence to support the nonmoving party's case." *Harn*, at *10 (internal quotation omitted). The burden is then shifted to the non-moving party to produce evidence showing that a dispute exists. See *Bhan v. NME Hosps. Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

**IV.**

**ARGUMENT**

**A.**   **Retaliation**

**1.**   **Participation Clause vs. Opposition Clause**

In the Plaintiff's memorandum, he spends significant time arguing the "participation clause" of 42 USC §2000e-3(a) applies to his retaliation claim in this matter. However, based on unequivocal case authority in the Ninth Circuit, it is clear that any "participation clause" protection in this case is irrelevant. Although he acknowledges the Ninth Circuit has concluded the participation clause only applies to an employee's participation <u>in formal proceedings before the Equal Opportunity Employment Commission</u>, *Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th Cir. 1990), the Plaintiff still maintains that he is somehow entitled to participation clause protection for his complaint to Dale Baldwin. See Pl's Mem., p. 4.  The Plaintiff argues that nothing in §2000e-3(a) "limits the term 'investigation' to one conducted by the EEOC;" however, pursuant to *Vasconcelos*, that is precisely what the participation clause does:

> The purpose of section 2000e-3's participation clause is to protect the employee who utilizes the tools provided by Congress to protect his rights. Indeed, the statutory language specifically limits the participation clause of section 2000e-3 to proceedings "under this subchapter." Accusations made in the context of charges before the Commission are protected by statute; charges made outside of that context are made at the accuser's peril.

*Vasconcelos*, 907 F.2d at 113 (citations omitted); *see also Greisen v. City of N. Las Vegas*, 251 F. App'x 462, 463 (9th Cir. 2007)(citing *Vasconcelos* for the proposition that the participation clause of § 2000e-3 applies only to EEOC proceedings).

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 4

The participation clause provides an "extreme level of protection" for false statements made in the context of an EEOC charge, which cannot be grounds for dismissal or discipline. *EEOC v. Total Sys. Servs.*, 221 F.3d 1171, 1175 (11th Cir. 2000). The opposition clause, on the other hand, does not provide protection to an employee who makes false statements and accusations of harassment or discrimination. *Id.* False accusations outside of the context of a formal EEOC charge are "made at the accuser's peril." *Id.*

The Plaintiff's objective is transparent—he would like the "extreme level of protection" afforded by the participation clause for the false statements of harassment and discrimination he made to Dale Baldwin. However, it is undisputed that the Plaintiff never filed a formal complaint or participated in EEOC proceedings prior to his termination. Thus, the Plaintiff's retaliation claim must satisfy the requirements of the "opposition clause" of § 2000e-3 to constitute an actionable retaliation claim, which does not protect him from the consequences of his false report. Under the pertinent opposition clause analysis, to meet his initial burden for his prima facie case, the Plaintiff must show that his complaints were based on a "reasonable belief" as discussed below.

## 2.    Prima Facie Case of Retaliation

To establish a prima facie case of retaliation, the Plaintiff must prove that he was "engaged in activity protected under Title VII," that he was subjected to "an adverse employment decision," and "there was a causal link between the protected activity and the employer's action." *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 506 (9th Cir. 2000). Here, the Plaintiff cannot satisfy his prima facie case.

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 5

Typically, it is the employer that moves for summary judgment in employment

discrimination or harassment cases, which is clearly illustrated by the cases cited by the

Plaintiff and EWS.  In those circumstances, the courts analyze whether it was reasonable

for the Plaintiff to believe he has engaged in a "protected activity" based on the pertinent

facts and circumstances.  The Plaintiff has not cited any case authority that states he

should be entitled to summary judgment based on his own conclusory claim that he had

a reasonable belief he had been subjected to discrimination.

An activity is only "protected" by Title VII when the charge or complaint is

based on a "'**reasonable belief**' that the employer has engaged in an unlawful employment

practice."  *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994)(citations omitted)(emphasis

added).  An erroneous belief that an employer has engaged in an unlawful employment

practice must be based on a good-faith mistake.  *Id.*  However, the Plaintiff's own statement

that his belief was reasonable is insufficient to satisfy this requirement.  *Patterson v. State

Dep't of Health & Welfare*, 151 Idaho 310, 320, 256 P.3d 718, 728 (2011); *cf* Pl's Mem., at

p. 8.  As the Eleventh Circuit has explained this standard:

> It is critical to emphasize that a plaintiff's burden under this standard has **both a subjective and an objective component**. A plaintiff must not only show that he subjectively (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that **his belief was objectively reasonable in light of the facts and record presented**. It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

*Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)(emphasis added).

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 6

This objective determination requires examination of all of the relevant circumstances, including the frequency and severity of the involved conduct. *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 963 (9th Cir. 2009). Opposition that is objectively unreasonable, meritless, or motivated by bad faith is not protected by Title VII. *See Mattson v. Caterpillar, Inc.*, 359 F.3d 885 (7th Cir. 2004) (concluding there is no opposition clause protection for claims that are "utterly baseless").

i.   **The Plaintiff's method of opposition is not dispositive of this case**

In his Memorandum, the Plaintiff spends considerable time arguing that the method and form of his complaint to Mr. Baldwin was reasonable. *See* Pl's Mem. at p. 11–15. Although the method and form of a complaint is one part of the Plaintiff's required showing, the reasonableness requirement in a prima facie case of retaliation also requires evidence that the Plaintiff reasonably believed EWS was engaged in discriminatory employment practices. The Plaintiff makes conclusory statements that he had a reasonable belief EWS was engaged in a unlawful employment practice without any legal or factual support for his position. Here, the facts show that the Plaintiff could not have reasonably believed he had experienced discrimination or harassment. As a result, he cannot meet his prima facie case.

ii.  **It was not objectively reasonable for the Plaintiff to believe that a false statement of harassment or discrimination is entitled to Title VII protection.**

Here, in light of the facts and circumstances known to the Plaintiff when he lodged his complaint of sexual harassment to Dale Baldwin, it was not objectively

reasonable for him to believe his claim was a protected activity.  The sequence of events and conversations that transpired between the Plaintiff and Kreg Davis is discussed in the Defendant's Memorandum in Support of Summary Judgment (Docket No. 24-1) and, to avoid unnecessary redundancy, will not be discussed in full in this memorandum.

In sum, the undisputed facts show that Kreg Davis asked the Plaintiff about pornography and masturbation during one conversation in the hangar.  The facts also show that the conversation was between father and son.  Declaration of Kreg Davis in Opposition to Plaintiff's Motion for Partial Summary Judgment ¶ 2 ("K. Davis Decl."); J. Davis Depo., p. 117 (attached as Exhibit C to the Affidavit of Counsel in Support of Plaintiff's Motion for Summary Judgment, Docket No. 23-3).   In that conversation, the Plaintiff himself first brought up his views on pornography.  K. Davis Decl. ¶ 2.  Kreg Davis denies that he asked the question multiple times during the conversation.   The Plaintiff did not express any hesitation about having the conversation, nor did he say he was uncomfortable or offended. *Id.* at ¶ 3.

Thereafter, Kreg Davis initiated a conversation about pornography on one other occasion.  The conversation occurred at Kreg Davis' cabin after business hours and while the Plaintiff was laying on the couch.  K. Davis Decl. ¶ 7. That conversation was in the context of EWS' official internet-use policy. *Id.* at ¶ 6. Once the two had agreed to work toward amended policy language, Kreg Davis believed that issue was resolved. Affidavit of Kreg Davis in Support of Defendant's Motion for Summary Judgment ¶ 16 (Docket No. 24-2) ("K. Davis Aff.").   It is undisputed that Kreg Davis did not ask the Plaintiff about masturbation. *Id.* ¶ 16; J. Davis Depo., p. 143.

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 8

The Plaintiff's conversation with Kreg Davis on September 24, 2013 was intended to address the Plaintiff's inflammatory and offensive comments on Facebook about the LDS Church.  K. Davis Decl. ¶ 8; K. Davis Aff. ¶ 20.  In that conversation, the Plaintiff himself raised the issues of pornography and masturbation, which is clearly reflected in the transcript of this conversation that was secretly recorded by the Plaintiff. See Affidavit of Counsel in Support of Defendant's Motion for Summary Judgment, Ex. C (Docket No. 24-10).

Despite these conversations, the Plaintiff complained to Mr. Baldwin that Kreg Davis asked him these questions on <u>three different occasions</u> and <u>as President and CEO of EWS</u>.  Declaration of Dale Baldwin in Support of Defendant's Motion for Summary Judgment ¶ 10 (Docket No. 24-5) ("Baldwin Decl.").  Even under the Plaintiff's version of what transpired during the conversation in the hangar, Kreg Davis only asked the Plaintiff about pornography and masturbation on that <u>one</u> occasion.

Nevertheless, the Plaintiff twisted the facts when describing his complaint for sexual harassment to Mr. Baldwin when he claimed that he had been asked about pornography and masturbation on three different occasions by Kreg Davis in his role as CEO of EWS.  Based on the Plaintiff's knowledge of the context and circumstances, the facts do not suggest or support any argument that the Plaintiff's misrepresentation to Mr. Baldwin merely constituted a good faith mistake.  Mr. Baldwin correctly concluded that the Plaintiff was not telling the truth about those encounters.  The Plaintiff should not be entitled to protection under Title VII or Idaho Law when he chooses to be dishonest about facts in an effort to manufacture a claim against EWS.  Thus, where the Plaintiff intentionally

conveyed an inaccurate version of the facts to Mr. Baldwin, which strategically ignored the context of these conversations, the Plaintiff cannot show that he "reasonably believed" that he had been subjected to harassment or discrimination.

### iii. It is not objectively reasonable to believe that an isolated question or remark may constitute harassment or discrimination.

It is likewise not objectively reasonable for the Plaintiff to believe that Kreg Davis' isolated question about pornography and masturbation constituted an unlawful employment practice as a matter of law.

The Ninth Circuit has held that "no reasonable person" would consider isolated and offhand comments "as working a discriminatory change in the terms and conditions of . . . employment." *Davidson v. Korman*, 532 F. App'x 720, 722 (9th Cir. 2013)(citation omitted).  Therefore, an employee's expression of opposition to a single comment cannot constitute a protected activity. *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997)(citing *Silver v. KCA, Inc.*, 586 F.2d 138 (9th Cir.1978)); see also *Miller v. WinCo Holdings, Inc.*, 2006 U.S. Dist. LEXIS 37145, at *24-25 (D. Idaho May 22, 2006); *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 963 (9th Cir. 2009); *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001)(holding employee could not have reasonably believed that the comment "I hear making love to you is like making love to the Grand Canyon" amounted to actionable sexual harassment).

Therefore, even if the Plaintiff allegedly failed to understand that Kreg Davis was speaking as his father at the hangar, that conversation, months before his termination, was an isolated incident. The Plaintiff's opposition to that isolated incident does not

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 10

constitute "protected activity" under Title VII.  *Go Daddy*, 581 F.3d at 963.  Since the

Plaintiff cannot establish a "protected activity," he cannot meet the causation requirement.

*See University of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2532-33 (2013)

(concluding that Title VII retaliation claims must be proved by "but-for" causation).  Thus,

the Plaintiff cannot satisfy a prima facie case of retaliation and the Plaintiff's Motion should

be denied.   Moreover,  as  discussed  more  fully  in  Defendant's  Motion  for  Summary

Judgment, since the facts do not support the Plaintiff's version, summary judgment should

be granted in favor of EWS.

### B.    Disparate Treatment

To succeed on his disparate treatment claim, the Plaintiff first has the burden

of establishing a prima facie case by showing:

> (1) he is a member of a protected class; (2) he was qualified for
> his  position;  (3)  he  experienced  an  adverse  employment
> action;  and  (4)  similarly  situated  individuals  outside  his  pro-
> tected  class  were  treated  more  favorably,  or  other  circum-
> stances  surrounding  the  adverse  employment  action  give  rise
> to an inference of discrimination.

*Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004) (citations omitted)[1]. In
a disparate treatment claim, evidence of discriminatory motive is critical.  *Barnowe v. Kaiser
Found Health Plan of the Northwest*, 2005 U.S. Dist. LEXIS 21955, at *8 (D. Or. May 4,
2005).

---

[1]   As also discussed in part A.2 supra, it is likewise true that the summary
judgement standard on disparate treatment claims is designed to allow a plaintiff to survive
dispositive motions field by defendant-employers.  The Plaintiff has not cited any cases that
hold a plaintiff-employee is entitled to summary judgment based on the identical, and
somewhat minimal, showing.

DEFENDANT'S  MEMORANDUM  IN  OPPOSITION  TO  PLAINTIFF'S  MOTION  FOR
PARTIAL SUMMARY JUDGMENT - 11

### 1.    Membership in a Protected Class

The Plaintiff's Complaint alleges he was discharged because of his religious beliefs, without specifying any particular religious beliefs for which he was discharged.  Pl's Compl., at ¶ 36.  At his deposition, the Plaintiff claimed he was discharged for his belief "[t]hat the character and nature of Joseph Smith is – should or could be scrutinized."  J. Davis Depo., p. 70.  He also testified regarding his belief that "other Mormon leaders could be scrutinized."  *Id.* at p. 71.  In his Motion for Partial Summary Judgment, the Plaintiff alleges he was a member of a protected class, i.e. "non-Mormon."  However, since there are no facts to support any alleged religious beliefs, he cannot show he is in a "protected class."

In any event, the Plaintiff cannot support his allegation that he was subjected to discrimination based on his religious beliefs, or lack thereof, because Kreg Davis was unaware that the Plaintiff had left the LDS Church until September 2013, long after the allegedly harassing conversations occurred.  K. Davis Aff. ¶ 30.  In his deposition, the Plaintiff admitted that he wanted to keep his decision to leave the LDS Church a secret from Kreg Davis and that he did not make his decision official until an email to the LDS Church.   J. Davis Depo., pp. 99, 105, 111.  Although membership in certain "protected classes" may often be readily observable, as in race or gender-based claims, this is not usually the case with an employee's religious beliefs, particularly where those beliefs are intentionally kept secret. Here, the Plaintiff allegedly underwent a change in his religious beliefs during his period of employment at EWS, from "Mormon" to "non-Mormon," which he expected Kreg Davis and EWS to simply know, despite the fact that he intentionally hid

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 12

that change from Kreg Davis.  Since Kreg Davis did not know of the status of the Plaintiff's religious beliefs prior to his termination, the Plaintiff cannot satisfy a prima facie case for disparate treatment.

## 2.    Evidence of Similarly-Situated Individuals

In the Plaintiff's Memorandum in Support of his Motion for Partial Summary Judgment, he makes the conclusory statement that because his replacement, David Potter, was a member of the LDS Church, he has shown that similarly situated individuals outside of his protected class received more favorable treatment than himself.  However, even if true, that alone does not establish the Plaintiff's required showing.

As discussed in detail in EWS' Memorandum in Support of its Motion for Summary Judgment, although "similarly situated" employees need not have identical positions with the company, they must be similar "'in all material respects.'"  *Hawn v. Exec. Jet Mgmt.*, 615 F.3d 1151, 1157 (9th Cir. 2010)(quoting *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006)).  In making this determination, the Court should consider the context and circumstances of the case, including "differentiating or mitigating circumstances" that would distinguish the Plaintiff from other EWS employees.  *Hawn*, 615 F.3d at 1157; *Economos v. Scotts Co., No. 05-271*, 2006 U.S. Dist. LEXIS 84646, at *15-16 (E.D. Pa. Nov. 20, 2006) (citations, quotations, and alterations omitted).

In this case, to show a prima facie case of disparate treatment, the Plaintiff must show that an EWS employee who was a member of the LDS Church, and who was similarly situated to himself in all material respects, received more favorable treatment based on similar conduct.  The Plaintiff has not made this showing.

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 13

In his Motion, the Plaintiff relies exclusively on an allegation that David Potter was hired as his replacement, which he believes is somehow evidence of discrimination. However, this has never been a basis for his complaint.  The Plaintiff's claims to Mr. Baldwin and the allegations in his Complaint are based on his belief that he was singled out and confronted by his father, Kreg Davis, when he left the LDS Church. J. Davis Depo., at pp. 194, 198 (attached as Exhibit A to the Affidavit of Counsel in Opposition to the Plaintiff's Motion for Partial Summary Judgment). Now, rather than showing how he was allegedly "singled out" by providing evidence that other similarly-situated employees were treated more favorably during the time of his employment, he alleges that the religious preferences of his replacement is sufficient evidence of discrimination. This allegation does not support the Plaintiff's claim—that he was singled out as a "non-Mormon" during his time at EWS.

Here, the initial conversation at the hangar that forms the basis of the Complaint was between father and son.  Kreg Davis explained in his Affidavit (Docket No. 24-2), the reasons he initiated the conversation in the hangar.  The Plaintiff's open views on pornography presented circumstances that were new to EWS, which prompted the discussion at Kreg Davis' cabin.  K. Davis Decl. ¶ 6.  These circumstances were very unique and needed to be fully considered to give context to the discussions.  The Plaintiff has not made any showing that a "similarly situated" employee was treated more favorably or produced any evidence as to how he was allegedly "singled out."

Further, David Potter is not a "similarly situated" employee. The Plaintiff has not produced any evidence that Mr. Potter received more favorable treatment as an EWS employee.  There is no evidence that Mr. Potter has ever taken an open position regarding

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 14

pornography or intentionally disparaged the LDS Church, or any other religions, on Facebook using an EWS computer during business hours.  See K. Davis Decl. ¶ 6; K. Davis Aff. ¶¶ 18–19.

Mr. Potter's selection for the position was based on his qualifications for the Corporate IT Manager position, not on his religious affiliation.  K. Davis Decl. ¶ 10.  Mr. Potter is more qualified than the Plaintiff had been for the Corporate IT Manager position with EWS.  *Id.* Prior to the Plaintiff's employment, Mr. Potter worked for EWS as the Corporate IT Manager for approximately six years.  *Id.*  He is an electrical engineer, and previously worked for Compaq for many years before his employment with EWS.  *Id.* Moreover, Mr. Potter has strong technical skills and people skills, whereas the Plaintiff has poor people skills.  *Id.*  Even without consideration of the Plaintiff's relationship with Kreg Davis, Mr. Potter is not a similarly situated employee in all <u>material respects</u> simply based on his superior qualifications.

Likewise, the Plaintiff has provided no evidence that EWS gives any preference in hiring or advancement to members of the LDS Church.  K. Davis Aff. ¶ 26. In fact, the Plaintiff's brother, Jacob Davis, who holds himself out as an atheist (i.e. "non-Mormon") is the assistant manager in EWS' Idaho Falls branch office and is the Vice-President of EWS. The Plaintiff's argument that he was discharged for his decision to leave the LDS Church is not supported by the facts.

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 15

## C.    EWS' Legitimate, Non-Discriminatory Reason for the Plaintiff's Termination

With respect to the Plaintiff's claims for retaliation and disparate treatment, even if he could successfully establish the respective prima facie elements of these claims, EWS has shown a "legitimate, nondiscriminatory reason" for the Plaintiff's discharge. *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Mr. Baldwin's conclusion that the Plaintiff had asserted a false complaint of harassment or discrimination was a legitimate, non-discriminatory reason for his discharge.

An employer may discharge an employee, without consequences under Title VII, if it believes the employee has been untruthful during an internal investigation of harassment or discrimination claims.  "The key inquiry is whether the [employer] had a good faith belief in the basis for the action it took."  *Kodwavi v. Intercontinental Hotels Grp. Res., Inc.*, 966 F. Supp. 2d 971, 984 (N.D. Cal. 2013)(citation omitted).  An employer is not obligated to prove that an employee <u>in fact</u> lied—it is a subjective standard, merely requiring that the employer believed a false statement was knowingly made. This is true even if the employer's belief was trivial or baseless.  *EEOC v. Total Sys. Servs.*, 221 F.3d at 1175-76; *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002).  A business decision to terminate an employee under these circumstances, though perhaps imprudent or unfair, is not actionable under Title VII unless the decision was <u>motivated by unlawful discrimination</u>. See *Id.* (citing *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir.1999)).

> When an employer is told of improper conduct at its workplace,
> the employer can lawfully ask: is the accusation true? When
> the resulting employer's investigation (not tied to the govern-

ment) produces contradictory accounts of significant historical events, the employer can lawfully make a choice between the conflicting versions--that is, to accept one as true and to reject one as fictitious--at least, as long as the choice is an honest choice. And, at least when the circumstances give the employer good reason to believe that the fictitious version was the result of a knowingly false statement by one of its employees, the law will not protect the employee's job.

False statements impair the employer's ability to make sound judgments that may be important to the employer's legal, ethical and economic well-being. So, an employer is entitled to expect and to require truthfulness and accuracy from its employees in an internal investigation that is exploring possibly improper conduct in the business's own workplace.

*Id.* at 1176.

Acts that may fall within the opposition clause occur within the context of the ordinary business environment. *EEOC v. Total Sys. Servs.*, 221 F.3d 1171, 1175-76 (11th Cir. 2000). With respect to claims subject to the opposition clause, "whether to fire an employee for lying to the employer in the course of the business's conduct of an important internal investigation is basically a business decision; this decision, as with most business decisions, is not for the courts to second-guess. . . ." *Id.*

Here, the Plaintiff focuses on the statement in Mr. Baldwin's investigative report that the Plaintiff was terminated for making a false allegation of sexual harassment against Bart Davis. The Plaintiff provides virtually no argument about the false allegation against Kreg Davis. In his deposition, Mr. Baldwin discussed the basis for the Plaintiff's termination. He testified that he did not believe that the Plaintiff was telling the truth with respect to his claim that Kreg Davis discussed pornography and masturbation on three different occasions. Baldwin Depo., pp. 75-77; 83-84 (attached to Aff. of Counsel in Support

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 17

of Plaintiff's Motion for Summary Judgment, Ex. B, Docket No. 23-5); *see also* Baldwin Decl. ¶ 11.

In this case, Mr. Baldwin's good faith belief that the Plaintiff misrepresented the context and circumstances of his conversations with Kreg Davis constitutes a legitimate, nondiscriminatory reason for the Plaintiff's discharge.   Here, Mr. Baldwin believed that the Plaintiff had only raised a claim of sexual harassment.   The Plaintiff admitted in his deposition that he did not expressly tell Mr. Baldwin that he was claiming anything more than that.   J. Davis Depo., pp. 194, 198.   Regardless of whether the Plaintiff allegedly intended to report both sexual harassment and religious discrimination, Mr. Baldwin did not rely on this distinction when performing his investigation. *See* Baldwin Depo., pp. 61–62; Baldwin Decl. ¶ 7, Ex. A.   He then made the decision to terminate the Plaintiff's employment.

The Plaintiff was not terminated for making a complaint of sexual harassment. Rather, he was terminated for making a <u>false </u>allegation of sexual harassment.  The Plaintiff has no legal right to be protected from false allegations.   As discussed by the case authority above, Mr. Baldwin was entitled to determine, as between the Plaintiff's and Kreg Davis' conflicting accounts, which of their versions to accept as true.   EWS has consistently maintained that Mr. Baldwin's determination was the justification for the Plaintiff's discharge. *Villiarimo*, 281 F.3d at 1063.   The evidence does not support an argument that the Plaintiff was terminated during his conversation with Kreg Davis on September 24, 2013. As such, Mr. Baldwin's honestly-held conclusion that the Plaintiff was not telling the truth about his claims of harassment and/or discrimination constituted a legitimate and non-

discriminatory reason for his termination as a matter of law.

### D.   Pretext

Since EWS has shown a legitimate, non-discriminatory reason for the Plaintiff's termination, the burden shifts to the Plaintiff to show "a pretext for unlawful discrimination" by either "directly persuading the [C]ourt that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Aragon v. Republic Silver State Disposal,* 292 F.3d 654, 658-59 (9th Cir. 2002). However, the Plaintiff cannot prevail "merely by denying the credibility of the defendant's proffered reason for the challenged employment action; he must provide evidence to support his position." *Holmes v. Tenderloin Hous. Clinic, Inc.*, 772 F. Supp. 2d 1074, 1092 (N.D. Cal. 2011). The Plaintiff's evidence must be both **specific** and **substantial** to overcome the legitimate reasons put forth by EWS. *Id.* at 659. The Plaintiff retains the ultimate burden to demonstrate that EWS' explanation was not the true reason for his termination. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095 (1981). "This burden now merges with the ultimate burden of persuading the court that []he has been the victim of intentional discrimination." *Id.*

In analyzing EWS' justification, it is not important whether the proffered justification was objectively false, i.e. whether the Plaintiff's complaint to Mr. Baldwin was actually untrue. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002). "Foolish or trivial or even baseless" reasons for an employer's actions are acceptable, as long as the employer honestly believed the reasons for its actions. *Id.*; *Kodwavi v. Intercontinental Hotels Grp. Res., Inc.*, 966 F. Supp. 2d 971, 984 (N.D. Cal. 2013).

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 19

Here, the Plaintiff has not presented any evidence that Mr. Baldwin did not honestly believe it was appropriate to terminate the Plaintiff's employment based on the Plaintiff's false complaint of harassment or discrimination.  Mr. Baldwin's interviews of the involved parties and review of the EWS Employee Handbook suggested to him that terminating the Plaintiff was the correct conclusion.  *See Kodwavi*, 966 F. Supp. 2d at 984. Without evidence of a discriminatory motive or proof that EWS' explanation is somehow untrue, the Plaintiff cannot succeed on his claims.

## V.
## CONCLUSION

Based on the above, Defendant EWS respectfully requests that Plaintiff's Motion for Partial Summary Judgment be denied.

DATED this 20th day of April, 2015.

CAREY PERKINS LLP


By   /s/ Carsten A. Peterson
　　　Carsten A. Peterson, Of the Firm
　　　Attorneys for Electrical Wholesale
　　　Supply Co., Inc.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of April, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECM system which sent a Notice of Electronic Filing to the following CM/ECF Registered Participants:

Gary Lee Cooper                          Gary@cooper-larson.com

James D. Holman                          holman@thwlaw.com


                                          /s/ Carsten A. Peterson
                                         Carsten A. Peterson


DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 21